## Francis v. Francis.

Dec. 19, 1941.

Faulkner & Faulkner for appellant.

H. H. Smith for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The record in this case presents a more or less tangled hank, resulting from a confusion of the facts, which in turn is largely contributed to in the preparation of the case by the injection of a number of transactions entirely irrelevant to the issues involved. However we have managed to clear away the smoke and the fog sufficiently to enable us to discern the matter in dispute, and which we have found to be simple and of easy determination.

The appellant and plaintiff below, Marion M. Francis, and the appellee and defendant below, Ira J. Francis, are brothers each residing in Knott County, Kentucky, their father being Samuel Francis, who before his death resided in the same county and was at one time the owner of a considerable landed estate in that county. He had been a confederate soldier in the Civil War of 1861-1865. After the enactment of chapter 6, page 41, of the Acts of 1912—commonly known as the "Confederate Pension Act"—he, on account of his age and infirmities, concluded to apply for a pension as provided by that act. To qualify himself to obtain its benefits it was necessary for him to reduce his ownership of property so as to come within the maximum limits provided by that statute in order to entitle one to the pension created by it. He therefore executed deeds to some of his children, with various stipulations therein by which a modicum of interest was retained, among which was one executed by him and his wife, on August 29, 1912, to their son, the defendant Ira J. Francis, in which the parents conveyed to their son a certain described tract of land in Knott County with a reservation of the coal mineral thereunder and it was couched in this language: "The coal mineral is excepted in this deed with mining rights" etc. That deed clearly conveyed to the defendant all of the fee-simple title to the described tract, except the coal mineral thereunder which grantors

reserved, and something like more than a year thereafter they sold or leased it to others.

There was some controversy made in the pleadings—and likewise in the evidence—as to whether the reservation in that deed (the original of which is lost) was framed in the exact language above inserted so as to confine it to only the coal underlying the conveyed land, the plaintiff making the contention that the record of the deed in the county court clerk's office had been mutilated so as to read the same as we have incorporated it, but that in the original deed which had been lost the reservation was thus made: "The coal & minerals is excepted in this deed," which if true would have reserved all minerals underlying the land. However before the case was finally submitted plaintiff by an amended petition admitted that the reservation so made applied only to the coal underlying the land, and that the interlined alterations of the deed on the county court record do not correctly express the facts. On October 30, 1915, defendant conveyed to plaintiff either all, or a portion of the land which the father of defendant conveyed to him by the deed of August 29, 1912. In defendant's deed to plaintiff a reservation was made in this language: "Mineral and mineral rights are not herein conveyed," thus limiting that deed to a conveyance of only the surface of the described land. Either at the time of that deed, or sometime prior thereto, plaintiff was put in possession of the land conveyed to him by the defendant, his brother, and he has continued to possess and occupy it since then.

In 1919, four years after receiving the conveyance from his brother, plaintiff executed a lease for the extraction of oil and gas from under the land with agreed royalty, or rentals in the absence of production by the lessee, but so far as this record shows no operation of any kind was ever had under that lease and the lessee appears to have surrendered it. Later on he executed another lease for the same purpose with like consequences. But, such acts by the surface owner without engaging in actual mining operations do not constitute hostile holding so as to be adverse to the title of the true owner of the mineral property and to mature a prescriptive title thereto in him upon the termination of fifteen years from the commencement of such active mining. Plaintiff therefore failed to prove prescriptive

title in himself to the contested oil and gas under his land.

Claiming that he was the owner of the oil and gas under the land conveyed to him by the defendant, his brother, plaintiff on July 23, 1934, filed this equity action in the Knott Circuit Court against defendant, alleging that he was the owner of the land described therein as well as the oil and gas thereunder, and which he obtained from defendant in the manner we have pointed out, and that the latter was himself claiming to own the oil and gas under the land, which claim he averred was false and fraudulent and cast a cloud upon his alleged title to the oil and gas under his land. He, therefore, sought judgment against defendant quieting his title to such minerals, and asked that defendant he adjudged not to be the owner thereof. Preliminary motions and demurrers were filed by defendant, followed by an answer which was later amended, and in the answer as amended the material allegations of the petition were denied, and the right of plaintiff to reform the deed executed to him by the defendant—so as to conform to his (plaintiff's) contention that only the coal was reserved in his brother's deed to him—the statute of limitations was interposed, it having been twenty-two years and nine months prior to July 28, 1937, upon which latter date plaintiff first asserted a mistake or oversight in his brother's deed to him, and which was done by an amended petition filed in this case on that date. Such oversight and mistake consisted, as averred by plaintiff, in excluding or reserving *all* the minerals under the land conveyed to him thereby, instead of confining the reservation or exclusion to only the *coal* underlying the land. Following pleadings made the issue and upon final submission the court dismissed plaintiff's petition and adjudged defendant to be the owner of the two minerals in contest. Complaining of that judgment plaintiff prosecutes this appeal.

The brief for plaintiff filed in this court takes a more or less wide range and discusses questions which we conceive to be entirely immaterial to the issues presented by the pleadings, they being: (1) Whether or not there was any correctible mistake, upon which an action for reformation could be based, made in the deed executed by defendant to his brother in August 1915? and (2) if such a mistake were made, then whether or not

plaintiff's right to have it corrected after the lapse of more than twenty-two years may be enforced? To answering those two questions the remaining portion of the opinion will be devoted, taking them up in the order named.

I. The alleged mistake as testified to by plaintiff did not consist in the employment of inaccurate language in the framing of the exclusion contained in his brother's deed to him, but only that it was mutually understood that the exemption, though framed so as to be all-sweeping in its terms, was not to apply, except as to the *coal* underlying the conveyed land. That testimony of plaintiff was denied by defendant. If it were necessary to the disposition of this case that we should determine whether or not the described situation constituted a mistake so as to give the right of reformation, we would be very much inclined, as presently advised, to hold that it did not, since plaintiff knew at the time—and which he alleged in his pleadings and testified to in his evidence—that the reservation contained in his brother's deed was exactly as expressed therein, and the "mistake" for which he seeks relief does not consist in the incorrect employment of language, not agreed and consented to by both parties, but upon a collateral understanding that the broad language, as expressed in the deed, should be limited and confined in its application to only the *coal* mineral underlying the land, which he says was understood and agreed to by his vendor, but which the latter denied. If, therefore, his contention is true, then his vendor failed to live up to the alleged agreed to interpretation; but which did not constitute a mistake as to the language employed in the deed by which the exclusion was created.

But, however that may be, we are thoroughly convinced that, even if the alleged mistake was one that might be corrected in an action for reformation, the pleaded limitation constitutes an effectual bar to any such proceeding. If plaintiff's alleged cause of action (and which he insists is true) is bottomed upon a fraud perpetrated upon him by his brother, then Section 2515 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, as modified by Section 2519, clearly bars such an action. On the other hand if plaintiff's cause of action could by any possible interpretation be considered as one for the recovery of real estate, then it should have

been brought within fifteen years as provided by Section 2505 of the same statutes. In any event there is no statute prescribing a greater limitation for the bringing of an action of this kind than the ones to which we have referred, and which clearly and unmistakably bars plaintiff's right to the relief he seeks, even if he ever possessed any. The only case cited by appellant's counsel on the question of limitations is Burt & Brabb Lumber Co. v. Bailey, 60 S. W. 485, 22 Ky. Law Rep. 1264, but a reading of that opinion clearly shows that it has no application whatever to the facts of this case.

It is also, perhaps, true that the testimony on the merits of the case is sufficient to sustain the judgment rendered by the chancellor, independently of any question of limitation, but, however that may be, plaintiff's right of action is clearly barred and the judgment is undoubtedly sustainable on that ground.

Wherefore, for the reasons stated, the judgment is affirmed.